[Cite as *Burnett v. Title Professionals Group*, 2024-Ohio-2322.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| MICHELLE BURNETT, | CASE NO. 2024-A-0005 |
| Plaintiff-Appellant, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| TITLE PROFESSIONALS GROUP LTD, et al., | Trial Court No. 2022 CV 00532 |
| Defendants-Appellees. | |

## O P I N I O N

Decided: June 17, 2024
Judgment: Affirmed

*Russell D. Kornblut*, Cardenas, Ruple and Kurt, LLC, 4770 Beidler Road Front, Willoughby, OH 44094 (For Plaintiff-Appellant).

*Casey P. O'Brien,* and *Justin Enger*, Ibold & O'Brien, 401 South Street, Chardon, OH 44024 (For Defendant-Appellee, Title Professionals Group LTD).

*Janet Butcher*, pro se, 2605 North Bend Road, Apartment 1601, Ashtabula, OH 44004 (Defendant-Appellee).

ROBERT J. PATTON, J.

{¶1} Plaintiff-appellant, Michelle Burnett ("Burnett") appeals from the judgment of the Ashtabula County Court of Common Pleas which granted motions for summary judgment in favor of defendant-appellees, Janet Butcher ("Butcher") and Title Professionals Group Ltd. ("TPG"). For the following reasons, we affirm.

{¶2} Factually, Butcher is Burnett's mother. In August 2010, Butcher secured a mortgage and purchased property located at 84 East Ashtabula Street, Jefferson, Ohio

44407 ("Property"). Approximately six years later, in 2016, Burnett moved in with Butcher. According to Butcher, Burnett agreed to financially contribute to household expenses while residing with her.

{¶3} After becoming ill in 2017, Butcher executed a quit claim deed to convey an interest in the property to Burnett. Butcher alleged that Burnett once again agreed to financially contribute to the household expenses. In 2021, Butcher was financially unable to maintain the property on her own and was forced to sell. Burnett agreed to the sale.

{¶4} Burnett, who is deaf and communicates through American Sign Language (ASL), alleges she was pressured to sign the sale documents without the benefit of an ASL interpreter. These documents consented to the transfer of the property and resulted in the loss of her portion of the proceeds from the sale. Instead, the proceeds from the sale of the property were distributed entirely to Butcher.

{¶5} On September 14, 2022, Burnett filed a complaint against her mother, Butcher, and TPG alleging breach of contract, fraud, and conversion from the sale of the property.

{¶6} On October 11, 2022, TPG filed their answer and cross-claim against Butcher alleging contribution and indemnification, fraudulent misrepresentation, conversion, and punitive damages.

{¶7} On December 8, 2022, Butcher filed her answer to Burnett's complaint and TPG's cross-claims, as well as a counterclaim against Burnett for breach of contract. The counterclaim alleged that Burnett failed to financially contribute to the household expenses as promised. It further alleged that Burnett, upon vacating the residence, removed personal property belonging to Butcher.

2

Case No. 2024-A-0005

{¶8} On October 13, 2023, Butcher filed her motion for summary judgment on Burnett's complaint. One month later, on November 13, 2023, TPG filed their motion for summary judgment on Burnett's complaint. No dispositive motions were filed as to Butcher's counterclaim or TPG's crossclaim. Burnett filed an opposition to both motions on November 17, 2023. On December 12, 2023, TPG filed a supplemental response to the motion for summary judgment. The summary judgment motions were reviewed on December 13, 2023.

{¶9} Two days later, on December 15, 2023, the trial court granted Butcher's motion and TPG's motion for summary judgment and dismissed Burnett's claims. The trial court also dismissed all other claims, including Butcher's counterclaims.[1]

{¶10} Specifically, the trial court concluded:

> [Burnett] has not shown evidence that she was to receive a portion of the net proceeds by way of a contract, a fraudulent representation, or civil conversion. The only signed document addressing the distribution of funds unambiguously states that 100% of the proceeds were to be distributed to * * * Butcher. The signed documentation and admissions contradict [Burnett]'s claims. Having a sign language interpreter present would not change what was read in the documents and signed by [Burnett] and * * * Butcher.

{¶11} Burnett timely appeals and raises a single assignment of error: "The trial court erred in granting Defendant-Appellees' Motion for Summary Judgment where genuine issues of material fact exist as to whether Plaintiff-Appellant, a deaf woman reliant on ASL interpretation, understood the documents Defendants-Appellees asked her to sign without an ASL interpreter present."

---

1. Butcher did not file an answer brief or a cross appeal. Therefore, we decline to review the trial court's disposition of her counterclaim.

Case No. 2024-A-0005

{¶12} The court will review an entry of summary judgment by a lower court de novo, "i.e., 'independently and without deference to the trial court's determination.' " *Superior Waterproofing, Inc. v. Karnofel*, 11th Dist. Trumbull No. 2017-T-0010, 2017-Ohio-7966, ¶ 19, quoting *Brown v. Cty. Commrs. of Scioto Cty.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶13} Civ.R. 56, which governs summary judgment proceedings, provides, in relevant part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶14} The party seeking summary judgment has the initial burden to set forth specific facts demonstrating that no issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). Once this burden is met, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists. *Id*. Not every factual dispute will preclude summary judgement. "Only disputes as to the material facts, those that may affect the outcome" will preclude summary judgment. *Found. Medici v. Butler Inst. of Am. Art*, 11th Dist. Trumbull No. 2020-T-0042, 2022-Ohio-2923, ¶ 19, citing *Bender v. Logan*,

4

2016-Ohio-5317, 76 N.E.3d 336, ¶ 49 (4th Dist.), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶15} In her complaint, Burnett alleged breach of contract, fraud, and conversion against TPG and Butcher. She argued that both appellees "failed to provide [her] with an interpreter at the time of closing in order to illegally pay the entire amount of the seller proceeds * * * to * * * Butcher for the sale of the subject real estate thereby breaching a contract, converting funds belonging to [Burnett] and perpetrating a fraud upon her."

### Breach of Contract

{¶16} "To prove a breach of contract claim, a plaintiff must show the existence of a contract, performance by the plaintiff, a breach by the defendant, and damage or loss to the plaintiff." *Ruez v. Lake Cnty. Educational Serv. Ctr.*, 2017-Ohio-4125, 82 N.E.3d 21, ¶ 10 (11th Dist.) citing *Allied Erecting & Dismantling Co. v. Uneco Realty Co.* (2001), 146 Ohio App.3d 136, 142, 765 N.E.2d 420. Burnett alleges that she was entitled to 50% of the proceeds from the sale of the residence and that TPG was aware that she was to receive those proceeds. Appellees had to point to evidence demonstrating that appellants could not prove the essential elements of a breach of contract claim to prevail on summary judgment. *LRL Properties v. Portage Metropolitan Hous. Auth.*, 11th Dist. Portage No. 98-P-0070, 1999 WL 1313627, *10.

{¶17} TPG handled the closing of the Property on May 5, 2021 as the appointed escrow agent. A document entitled, the Appointment of Escrow Agent provides "TPG is not the general agent of any Party or of the Parties." Section 9 of the Appointment of Escrow Agent reads in relevant part:

> Buyer and Seller expressly agree TPG shall have no general
> fiduciary duties or obligations to either Buyer or Seller. TPG is

5

acting solely as a limited agent of the Parties where all duties are contractual. The signature of the Buyer * * * and, or Seller on the preliminary and, or final HUD-I Settlement Statement constitutes the respective Party's agreement to, consent to, acceptance of, and ratification of the propriety, validity, and correctness of the * * * disbursements assessed against each Party as set forth in the HUD-I Settlement Statement and shall authorize TPG to * * * make such disbursements and allocations in accord with the preliminary and/or final HUD-I Settlement Statement, and TPG upon * * * making such disbursements * * * shall be released and discharged from any and all claims or liability for improper, incorrect, or unauthorized fees, charges, allocations, or disbursements. * * *

{¶18} While TPG was the appointed escrow agent for purposes of the closing, TPG was not a party or otherwise involved in any agreement between Butcher and Burnett regarding the disbursement of the proceeds. As such, TPG could not breach that agreement. Moreover, the disbursement form was completed by Butcher and Burnett, and TPG made the distribution based upon that executed document. Therefore, upon the disbursement, TPG would be discharged from such a claim. As such, the trial court correctly granted TPG's motion for summary judgment in their favor on the breach of contract claim.

{¶19} As to the breach of contract claim against Butcher, Burnett alleges that she was entitled to half of the proceeds due to her status as an owner of the Property. Other than her status as a co-owner of the Property, Burnett provided no authority or evidence in support of her contention that she was contractually entitled to 50% of the proceeds from the sale.

{¶20} Butcher, in her counterclaim, notes the existence of a prior oral contract. According to Butcher, that agreement included the transfer of an ownership interest via quit claim deed to Burnett in exchange for Burnett paying rent and sharing in the

6

Case No. 2024-A-0005

household expenses.[2] Despite that alleged prior agreement, Butcher states that Burnett agreed that all the proceeds from the sale of the property would be disbursed to Butcher. Specifically, in her Answer and Counterclaim, Butcher alleged that "the house would be sold, mortgage and associated bills paid, and the balance of funds would be given to [Butcher] such that she could pay the balance due on her credit card and have some funds remaining for her relocation."

{¶21} Burnett acknowledged in her answer to interrogatories there was an agreement with Butcher "that was written in some part" but she could not say if it was a contract. Burnett did not provide any portion of a written contract or agreement with her complaint or as an exhibit in her brief in opposition to the motions for summary judgment filed by appellees either in regards to the living arrangements or her entitlement to the proceeds.

{¶22} In support of her motion for summary judgment, Butcher provided a copy of the Disbursement Instructions which authorized TPG to deposit the entirety of the proceeds to Butcher's account. In handwriting, the authorization form states, "100% proceeds to Janet." This document was signed by both Butcher and Burnett. Butcher also attached Burnett's answers to TPG's interrogatories and requests for admissions wherein Burnett admits that she can read and write in English, that she only read the signature pages, and that she signed the documents without a sign language interpreter present. Burnett alleges that she "did not knowingly sign or read" this document.

{¶23} As noted by the trial court in its entry granting summary judgment in favor of appellees, "[t]he only signed document addressing the distribution of funds

---

2. Butcher alleges a breach of this contract in her counterclaim.

Case No. 2024-A-0005

unambiguously states that 100% of the proceeds were to be distributed to * * * Butcher. Having a sign language interpreter present would not change what was read in the documents and signed by [Burnett] * * *." (Td. 56, p. 3). Burnett did not show that she was contractually entitled to any portion of the proceeds. Thus, the trial court did not err when it concluded that no genuine issue of material fact existed as to Burnett's breach of contract claim.

**Fraud**

{¶24} Burnett alleged in her complaint that appellees "owed a duty to a deaf individual such as [Burnett] to have a sign language interpreter so she could understand and explain what is being said and done, and go over any documentation that was executed, especially where [Burnett] supposedly waived her share of the disbursement * * *." She further alleges that TPG "needed to separately meet with [Burnett] * * * and ascertain why [Burnett] would release * * * her * * * share of the sale proceeds." Burnett argues that she was coerced or otherwise forced to sign the documents without comprehending what she was signing due to the lack of an ASL interpreter.

{¶25} Generally, a claim of fraud "requires proof of the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." (Citations Omitted). *Russ v. TRW, Inc., 59* Ohio St.3d 42, 49, 570 N.E.2d 1076, 1083 (1991).

Case No. 2024-A-0005

{¶26} "A claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation. 'The fraud relates not to the nature or purport of the [contract], but to the facts inducing its execution * * *.' *Haller v. Borror Corp. (1990), 50 Ohio St.3d 10, 14, 552 N.E.2d 207, 210.* In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to her detriment. *Beer v. Griffith* (1980), 61 Ohio St.2d 119, 123, 15 O.O.3d 157, 160, 399 N.E.2d 1227, 1231." *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502, 692 N.E.2d 574, 578 (1998).

{¶27} As noted above, TPG facilitated the closing on the Property and the disbursement of funds in accordance with the written authorization signed by Burnett and Butcher. Burnett did not indicate any misrepresentation by TPG in this transaction. Instead, she argued that TPG had a duty to provide an interpreter to Butcher for the closing. Burnett fails to identify any duty owed to her by TPG in this transaction. In her responses to TPG's request for interrogatories, Burnett stated that she told her mother of the need for an interpreter and expected TPG to provide one. Notwithstanding Burnett's claims of needing and demanding an interpreter, she nevertheless proceeded to sign the closing documents.

{¶28} In support of their motion for summary judgment, TPG also provided an affidavit from a Senior Managing Partner, James Janson, which stated that Butcher did not request an interpreter at any time, and that no industry standard requires an interpreter absent an express request. Further, the Appointment of Escrow indicated that TPG had no fiduciary duty or obligation to Burnett, a seller of the Property.

9

**{¶29}** As Burnett failed to identify any fraud by TPG in regard to the disbursement of funds, an agreement that was made between Burnett and Butcher, the trial court did not error in granting summary judgment in favor of TPG on Burnett's fraud claim.

**{¶30}** Burnett also alleges that her mother owed her a duty to have an interpreter present. Burnett does not indicate how Butcher, her mother, had a duty or contractual obligation to have an interpreter in this instance. Burnett admitted that she reads and writes English although she disputes her level of comprehension. She asserted that she was lied to regarding the contents of the documents she was signing. However, the clear language in the disbursement form, signed by Burnett, obviated any need for an interpreter regarding the disbursement of the funds. The instructions for disbursement clearly stated "100% proceeds to Janet." Burnett does not otherwise indicate how the disbursement was misrepresented in the document or how the execution of the document was fraudulent. Therefore, the trial court did not error when it granted summary judgment in favor of Butcher on this claim.

### Conversion

**{¶31}** Burnett alleged in her Complaint that Butcher converted her portion of the proceeds and that TPG "acted in concert" with Butcher to convert the funds.

**{¶32}** "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his [or her] possession under a claim inconsistent with his [or her] rights." *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). "The elements of conversion are: (1) the plaintiff's ownership and right to possess the property at the time of the conversion; (2) the defendant's conversion by wrongful act of plaintiff's property rights; and (3) damages." *Martin v. MAHR*

10

Case No. 2024-A-0005

*Machine Rebuilding, Inc.*, 11th Dist. Lake No. 2015-L-101, 2017-Ohio-1101, 2017 WL 1135495, ¶ 13 citing *Floch v. Davis*, 11th Dist. Trumbull No. 2013-T-0021, 2013-Ohio-4968, ¶29.

{¶33} "Where conversion is premised on the unlawful retention of property, the plaintiff must establish (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) the possessor refused to deliver the property to its rightful owner." *Holman v. Wiser*, 2023-Ohio-4095, 228 N.E.3d 745, ¶ 44 (11th Dist.), citing *Fisher v. Clay*, 11th Dist. Trumbull No. 2011-T-0031, 2011-Ohio-6007, ¶ 22.

{¶34} Burnett provided no evidence that TPG was aware of any contract or agreement between Butcher and Burnett regarding the disbursement of the funds. Further, the funds were distributed to Butcher per the disbursement instructions as authorized by Burnett. TPG has not retained any funds in relation to the transaction. As such, the trial court appropriately granted summary judgment in favor of TPG on the conversion claim.

{¶35} As to Butcher, Burnett failed to establish that she demanded the return of the Property or that she was the rightful owner of the proceeds that were distributed to Butcher. Burnett asserted that her status as a 50% owner of the property equated to a 50/50 distribution of proceeds. However, the disbursement instructions signed by Burnett specifically provided that the entire proceeds were to be deposited into Butcher's account. Burnett did not otherwise prove she was otherwise entitled to any of the proceeds. As such, the trial court appropriately granted summary judgment in favor of Butcher on the conversion claim.

11

Case No. 2024-A-0005

{¶36} As the trial court appropriately determined no genuine issue of material facts exist as to the claims set forth in Burnett's complaint, the trial court did not err in granting summary judgment in favor of appellees. Burnett's sole assignment of error is without merit.

{¶37} For these reasons, we affirm the judgment of the Ashtabula County Court of Common Pleas.

EUGENE A. LUCCI, P.J.,

MARY JANE TRAPP, J.,

concur.

Case No. 2024-A-0005